(No. 4650—

GEORGE SCHNEIDER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 8, 1957.*

MICHAEL F. RYAN, Attorney for Claimant.

LATHAM CASTLE, Attorney General; THOMAS G. CRONIN, Assistant Attorney General, for Respondent.

FEARER, J.

George Schneider filed a complaint in this Court, in which he seeks an award of $10,338.29 for back salary as a Communicable Diseases Investigator I in the classified service for the Department of Public Health of the State of Illinois. The amount asked represents salary due and owing him for the period from April 1, 1951 to December 22, 1953, being from the date he was illegally prevented from performing his duties as a Civil Service Communicable Diseases Investigator I in the Department to the date of the judgment order directing his reinstatement to said position at the rates provided for said position, as set forth in the bill of particulars attached to said complaint.

In addition to the complaint and transcripts of evidence, the record consists of the following:

Answer.

Amended answer of respondent.

Departmental Report.

Motion of respondent for an order requiring claimant to answer under oath certain interrogatories.

Order of the Chief Justice that claimant answer under oath certain written interrogatories propounded by respondent.

Answer of claimant to certain written interrogatories of respondent.

Motion of claimant to strike Departmental Report.

Order of the Chief Justice denying motion of claimant to strike the Departmental Report.

Claimant's exhibits Nos. 1 to 7.
Respondent's exhibit No. 1.
Brief and argument of claimant.
Brief and argument of respondent.
Reply brief of claimant.

George Schneider, after taking and passing a Civil Service examination, was certified and appointed as a Communicable Diseases Investigator I for the Department of Public Health of the State of Illinois on November 2, 1943 with "war tenure" status. His employment was terminated on April 14, 1949 by reason of the abolishment of the position due to the fact that the work load was insufficient to continue the independent position. This appears in the Departmental Report.

On August 17, 1949, claimant requested the Civil Service Commission to place his name on the reinstatement list, and on August 19, 1949 the Commission complied with his request. On March 27, 1951, the President of the Civil Service Commission advised claimant that on February 2, 1951 the Commission had ordered his name stricken from the reinstatement list, as set forth in exhibit A, which is attached to the complaint and made a part thereof.

Upon refusal to return his name to the reinstatement list, claimant instituted a mandamus suit in the Superior Court of Cook County for the reinstatement of his name and for appointment to fill any vacancy existing in the position of Communicable Diseases Investigator, being entitled "People of the State of Illinois, ex rel George Schneider, vs. Maude Myers, Et Al, No. 51 S 19698". Within a short time after the complaint was filed in the Superior Court of Cook County, the President of the Civil Service Commission advised claimant by letter that

he was entitled to have his name placed on the reinstatement list.

It is further alleged in the complaint that on May 27, 1953 claimant filed an amended and supplemental complaint for mandamus in the Superior Court hereinabove referred to, wherein it was asserted that he had discovered that a person, with less seniority than he, had been reinstated as a Communicable Diseases Investigator on or about April 1, 1951, and demanded reinstatement to his position with back salary. (Claimant's exhibit No. 1.)

The defendants in said litigation, the Director of Public Health, members of the Civil Service Commission, Auditor of Public Accounts and State Treasurer, all represented by the Attorney General, filed a motion to dismiss the amended and supplemental complaint. (Claimant's exhibit No. 3.) The motion to dismiss was denied by the Superior Court. The defendants, having elected to abide by the motion, did admit the allegations of the amended and supplemental complaint for mandamus, and on December 22, 1953 a judgment order for the writ of mandamus commanding the reinstatement of the claimant to his position as a Communicable Diseases Investigator was entered by the Hon. Donald McKinlay, Judge of the Superior Court of Cook County. (Claimant's exhibit No. 5.)

Prior to the entry of the judgment, claimant amended his complaint, and eliminated the claim for back salary due to the lapse of the biennial appropriation. (Claimant's exhibit No. 2.) A judgment order was entered without prejudice to claimant's back salary rights. Pursuant to this judgment order, claimant was reinstated to his

position, and has been receiving the salary therefor at the rate of $319.00 per month since December 22, 1953.

The records of the Department filed in this cause show that one Elmer Ray Longenbach was laid off in 1949, and reinstated as a Communicable Diseases Investigator on March 15, 1951.

In the motion filed to the complaint for mandamus in the Superior Court of Cook County, it is alleged that Mr. Longenbach, who was a party to the suit, had less seniority than claimant, and that claimant was entitled to reinstatement in preference to him. It was further admitted in the record, by reason of the motion filed by respondent, wherein all matters well pleaded were admitted, that Longenbach was working on the date of claimant's reinstatement on December 22, 1953, and continued to work along with claimant since that time as a Communicable Diseases Investigator.

At the hearing before Commissioner Presbrey, it was shown that the salary attached to claimant's position was $270.00 a month for the biennial period from July, 1949 to July, 1951; from July 1, 1951 to July 1, 1952 it was $297.00 per month; for the period of July 1, 1952 to January 1, 1953 the salary was $309.00 per month; and that for the period of January 1, 1953 to December 22, 1953 the salary was $319.00 per month.

Respondent, at the time of the trial, did not offer any evidence, but merely offered in evidence its exhibit No. 1, a Departmental Report, to which there have been filed certain objections. By the order entered by this Court, these objections were overruled with a recitation in said order that only such matters, which the Court believed to be competent evidence, if testified to by a

member of the Department, would be considered in the determination of this case.

By way of argument respondent contends, first, that the record does not disclose that claimant took and passed a Civil Service examination for his appointment and certification as a Communicable Diseases Investigator with "war tenure" status, although there is no dispute on the fact that claimant did hold the position on "war tenure" status.

The state further disputes the fact that Elmer Ray Longenbach had less seniority than claimant.

Further, by the operation of law, claimant lost the seniority he had to Elmer Ray Longenbach during the period of time for which claimant is seeking back salary, and that Longenbach had, in fact, greater seniority than claimant.

It is further argued that George Schneider was given a war certification on November 2, 1943 for the position of Communicable Diseases Investigator; and, that he occupied that position until April 14, 1949, at which time the position was abolished, and claimant's employment was terminated.

The war certification provided that the tenure of all Civil Service appointments made during the war emergency shall terminate upon the establishment of appropriate eligible lists derived from competitive examinations to be held as soon as practicable after the termination of the unlimited national emergency.

In 1949, Senate Bill No. 300 was passed by the General Assembly, and later was approved by Governor Stevenson on August 1, 1949. The bill amended the Civil Service Act, and eliminated reference to war duration certificates. The meaning of the bill was clear, in that

persons, who had only war duration certification, and whose services were terminated before August 1, 1949, were not entitled to reinstatement with permanent certified status. Elmer Ray Longenbach was laid off on October 31, 1945, and had thereby gained eligibility for permanent certification by virtue of Senate Bill No. 300, effective August 1, 1949. His name, therefore, was on a reinstatement list, and when reinstated was given permanent certification on March 15, 1951. Claimant's position was terminated on April 14, 1949. Therefore, he was never on a permanent certified status. Since claimant was not employed by the state on August 1, 1949, he could not be placed on a permanent certified status. The only way this could be accomplished was for him to take and pass an examination conducted by the Civil Service Commission.

Plaintiff's contention that he had seniority to Longenbach is without merit, because Longenbach was not laid off until October 31, 1949, three months after he had been placed on a permanent certified status.

Claimant testified he was certified to and appointed to his position on November 2, 1943. Under the law it is impossible to be certified and appointed until one first passes a Civil Service examination. The Departmental Report filed by respondent, and admitted as part of the evidence in this case, being that part of the Report which this Court believes to be competent, admits that claimant was certified on November 2, 1943. In the Departmental Report, a letter from Robert L. Hunter, then President of the Illinois Civil Service Commission, to the effect that claimant's name was on the eligible register for Communicable Diseases Investigators appears.

In claimant's exhibits, being pleadings filed in the Superior Court of Cook County in the mandamus suit, it was alleged that claimant took and passed a Civil Service examination for his position. By the motion filed, the truth of the allegations of the complaint were admitted, and in the order entered by the Superior Court, wherein claimant was reinstated, certain findings were made, all of which are binding upon respondent.

The question as to back salary was eliminated by the amendment to the amended and supplemental complaint for mandamus, for the reason that the appropriation had lapsed, which would prevent the court from entering a writ to compel the defendant to pay the back salary.

This Court has previously held that, where a Civil Service employee is illegally prevented from performing his duties, and is subsequently reinstated to his position by a court of competent jurisdiction, he is entitled to the salary attached to said office for the period of his illegal removal.

> Poynter vs. State of Illinois, 21 C.C.R. 393.
> Smith vs. State of Illinois, 20 C.C.R. 202.
> People vs. Thompson, 316 Ill. 11.

We cannot agree with respondent's contentions and matters set forth by way of defense to claimant's claim for back wages, except that any earnings of claimant during the period of time when he ws illegally prevented from performing services for respondent shall be a set-off against any award that might be made, which was this Court's ruling in the case of Poynter vs. State of Illinois, 21 C.C.R. 393, and also in the case of Kelly vs. Chicago Park District, 409 Ill. 91.

It is our contention that respondent had an opportunity of defending the question of seniority, and all rights pertaining to claimant's position as to whether or not he was illegally discharged, and all questions, except the questions of back salary, in the mandamus suit. As to these matters, which are determining factors in arriving at a decision in this case, they are res judicata, and cannot be raised in this suit by way of defense. These issues have already been decided in favor of claimant.

In regard to the amount of the award, this is of considerable concern to this Court. Interrogatories were served upon claimant by respondent covering primarily his earnings during the period of time when he was illegally prevented from performing services for respondent.

There was filed in this Court an answer to the interrogatories to the effect that, for the period from April 1, 1951 to July 1, 1951, claimant was engaged in the tavern business with his wife, Anna B. Schneider, as co-owner. During that period of time he was not employed by anyone, since he was engaged in the tavern business, and during the same period of time he received no daily, weekly or monthly wages; that for the year 1951 the net profits from said business were $480.78, which further appears from the statement of profit and loss for the year ending December 31, 1951, prepared by his auditor, Frank Rosulek. Claimant sets forth in the answer to the interrogatories filed covering the period from July 1, to December 1, 1953 that he was still engaged in the tavern business with his wife, and that he had no other employment during that time. To the interrogatories in regard to his daily, weekly or monthly wages, he answered that

he received no daily, weekly or monthly wages. The net profits for said business for the year 1952 were $972.67, and for the year 1953 said business showed a loss of $509.25. A statement of profit and loss for the year ending December 31, 1952, which was made by the same auditor, showed a net profit of $972.67. A statement of profit and loss for the period of January 1, 1953 to November 6, 1953, prepared by the same auditor, reflected a loss of $509.25.

Claimant further answered the interrogatories in regard to employment, either temporary or permanent, during the period of December 1, 1953 to and including December 22, 1953, to the effect that he was not employed between those dates. During that period he stated he was unemployed, and did not receive wages or salary of any kind. He contended the answers to the above questions represented his employment and all wages earned by him from April 1, 1951 to and including December 22, 1953.

On the 26th day of October 1956, pursuant to a notice given by this Court, claimant and his counsel appeared to answer certain questions under oath in regard to his earnings during the period of time that he was not employed by the State of Illinois, and not receiving wages from the state. Certain other questions were asked of him in regard to his testimony at the time of the trial, his answers to the interrogatories, and also the statements filed by him, which were prepared by his auditor. One such item is an item of expense, which covers wages paid to claimant's daughter, and is as follows:

In the statement of profit and loss ending December 31, 1951 there appears to be wages paid of $1,032.00; in the profit and loss statement ending December 31, 1952 wages of $1,048.00; and, in the statement between December 1, 1953 and November 6, 1953 wages of $864.00.

As we recall from claimant's testimony, these wages were paid his wife's daughter during a period of time when claimant was spending a small portion of his time at the tavern, which appears from his testimony at the time of the trial, and also from his testimony offered before this Court.

Claimant did not testify to any regular hours of employment at the tavern. He testified, and the record so reflects, that outside help was employed, and wages paid therefor, which seems to us to be unreasonable, due to the fact that the business for the three year period showed a very small profit. In fact, in one of the years there was a loss.

Furthermore, it apears to be unreasonable, under the circumstances, for claimant to sit idly by, and voluntarily make no effort to seek employment outside of the tavern business, or to devote more time to the tavern business, all of which would have been in mitigation of any award to be entered in this case.

Another matter, which was gone into at the time of the trial, and also at the time of the examination of claimant before this Court, was the question of claimant living out of the tavern during the entire period of time that he was unemployed. Claimant testified that he stayed and ate at the tavern during that period of time.

It is well settled in this state that a claimant must do all in his power to mitigate damages, and we do not feel that claimant has done what the law requires of him in mitigation, and, in that regard, sitting as a jury, we have the right to fix the damages, and make an award, which we believe would be fair to all concerned. We are, however, not bound by the bill of particulars, stipulation, or answer to interrogatories, and can arrive at a figure in

addition to the deductions made for other earnings in the amount of $676.65.

It is, therefore, the order of this Court that claimant be awarded the sum of $4,759.51.