(No. 76-CC-1193–)

EARL J. NIEMOTH, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed September 18, 1979.*

RUDNICK & WOLFE (JAY A. CANEL and ALLEN M. SHAPIRO, of counsel), both for Claimant.

WILLIAM J. SCOTT, Attorney General (JAMES O. STOLA, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

Claimant, Earl J. Niemoth, hereinafter referred to as Niemoth, filed a claim for money damages against the State of Illinois, hereinafter referred to as Respondent, alleging that Respondent, acting through the Illinois Department of Corrections, is guilty of breach of contract covering property owned by Wiemoth and located at 4616 North Malden in the City of Chicago, Illinois, which said property Respondent had agreed to lease from Niemoth and to occupy same under a pre-release program of male persons convicted under the Criminal Code of the State of Illinois. This matter was heard on September 9, 1977, through September 19, 1977, with a number of witnesses testifying for both Niemoth and Respondent and numerous exhibits admitted into evidence.

The testimony and exhibits received in evidence show that on May 23, 1975, Niemoth and Respondent entered into a lease for the rental of Niemoth's premises, which said lease was to cover the period June 1, 1975, through June 30, 1977, at the monthly set rental in the amount of $3,822.39, none of which said rental payments were ever made by Respondent. The lease referred to and the rider attached thereto, both of which were executed by the respective parties on May 23, 1975, was prepared by Respondent after negotiations by officers and agents of Respondent with Niemoth. The lease provided, among other things, that certain improvements to the premises were to be made by Niemoth to make the premises suitable for Respondent's intended use. Numerous conferences were held between Niemoth and representative of the Respondent and a number of inspections of the premises were made prior to the execution of the lease and rider. The testimony of the

several witnesses together with various communications directed to Niemoth by agents of the Respondent indicated a difference of opinion as to the quality of the improvements being made. Respondent gave Niemoth notice of termination of the lease on October 27, 1975, which said notice was executed by Roland W. Burris, Director of the Department of General Services. Respondent did not at any time take occupancy of the premises involved. The record is replete with inconsistent testimony concerning the extent and quality of the improvements which Niemoth had agreed to under the terms of the lease.

The Claimant's position is the Respondent terminated the lease because of community pressure and not because of non-compliance by Niemoth under the terms of the written document. Respondent's witnesses testified that the alleged community pressure did not influence the decision to terminate the lease. There was testimony in fact that the dispute as to the quality and extent of renovations arose sometime before there was any showing of such community pressure. The Respondent's position is that its acceptance of the premises was predicated upon Niemoth making specified improvements to the extent that it was safe and satisfactory to the Respondent, citing *Ace Engineer Co. v. Pioneer Brewing Co.* (1943), 319 Ill. App. 113, 48 N.E.2d 770, and that it's implicit in any lease that the landlord warrant the habitability of the building. *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 230 N.E.2d 208.

Respondent also relies in its position that Niemoth did not substantially perform under the terms of the lease and rider. This is a question of fact and the Court must therefore rely on the evidence adduced at the time of the hearing.

Respondent further relies on the proposition that Niemoth failed to mitigate his damages if Respondent did not properly terminate the lease and cites to the Court, Ill. Rev. Stat. 1977, ch. 37, par. 439.24—6 and *Schneider v. State of Illinois* (1957), 22 Ill. Ct. Cl. 453.

Niemoth contends that he has complied with all of the terms, promises and covenants set forth in the lease agreement and that the improvements required to be made by him were substantially performed and that the premises were tendered to Respondent in a safe and satisfactory condition and asks, therefore, for judgment in his favor and against the Respondent in the sum of $93,559.75.

The parties to these proceedings and the Commissioner of this Court who conducted the hearing herein did, by agreement of parties, inspect the premises on October 5, 1977. At the time of the inspection, which was approximately two years following the period of negotiations and improvements to said premises, it revealed that the property was in a poor state of repair and was at that time being used by various tenants on what appeared to be a day-to-day and month-to-month basis, and in the opinion of the Commissioner, was not a safe and satisfactory place as was contemplated by Respondent on May 23, 1975. The extent of deterioration to said premises between the middle of 1975 and the time of inspection is of course speculative and no evidence or testimony was introduced to show that the premises had suffered beyond ordinary wear and tear.

The issue before the Court is, therefore, whether Respondent had the right to terminate the lease agreement by notice given on October 27, 1975, by relying on its position that Niemoth had not performed as he was bound to do. It is this Court's judgment, based on the

testimony and exhibits introduced into evidence as well as Commissioner's findings following inspection of the premises, that Niemoth had not performed under the terms of the lease agreement and that therefore Respondent did in fact have the right to terminate the lease agreement.

Although Respondent has suggested that Niemoth failed to mitigate his damages, which said position appears to be well supported from the record, this question need not be considered in view of the Court's decision of Respondent's right to terminate the lease.

In view of the Respondent's delay in giving notice of termination, which it could have done at the time that it first determined that the improvements were not being properly made, to Niemoth, it is the opinion of the Court that the rental payments as provided under the lease did accrue and became due Niemoth for the period June 1, 1975, through October 27, 1975, being the date of notice of termination. The total rent due is $19,111.95. This figure is based on five months rent at $3,822.39 per month as agreed to in the terms of the lease. Since Respondent also agreed to pay for electricity and janitorial services in clause II of the lease, $302.65 and $967.65 respectively, will be included in Claimant's award. These are pro-rated amounts based on figures stated in Claimant's exhibit number five which lists Claimant's expenses from May to December of 1975.

Accordingly, judgment in the amount of $20,381.55 is hereby entered in favor of Earl J. Niemoth.