MYRTLE BEESE, Plaintiff-Appellant, *v.* NATIONAL BANK OF ALBANY PARK *et al.*, Defendants-Appellees.

First District (5th Division)    No. 79-113

Opinion filed March 28, 1980.

Klohr, Braun, Lynch & Smith, Ltd., of Chicago (John J. Treacy, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from the dismissal of plaintiff's action in which she alleged in her second amended complaint that she was a tenant in defendants' multiple dwelling building in the Village of LaGrange (the Village); that she was injured when she fell on an exterior stairway of the building; and that her fall was the proximate result of violations of certain provisions of the Building Officials and Code Administrators basic building code (the BOCA code).

Defendant Ben Kushner (hereafter defendant)[1] moved to dismiss, asserting in substance that the BOCA code was not applicable because defendant's building preexisted the adoption of the code by the Village. The motion was granted, and this appeal followed.

OPINION

■■ In determining the propriety of the dismissal of an action, we are concerned on review only with questions of law presented by the pleadings (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538), and we test the sufficiency of the complaint by ascertaining whether the essential elements of a cause of action are alleged (*Williams v. RCA Corp.* (1978), 59 Ill. App. 3d 229, 376 N.E.2d 37).

It appears here that the Village adopted the BOCA code on April 28, 1969, and that section 105.1 thereof provides in pertinent part that the use and occupancy of any structure existing at the time the code was adopted by the Village "may be continued without change, except as may be specifically covered in the Basic Code or as may be deemed necessary by the building official for the general safety and welfare of the occupants and the public." Section 106 requires the conformance of existing buildings to the code under certain circumstances where repairs or alterations are made.

It is unquestioned that defendant's building preexisted the adoption

---

[1] National Bank of Albany Park, a named defendant, was dismissed by an order from which no appeal has been taken and, because plaintiff did not comply with section 29 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 29), the trial court did not obtain jurisdiction over "unknown owners."

of the BOCA code, and that none of the exceptions in section 105.1 or the circumstances set forth in section 106 are involved here. Thus, because the purported cause of action was based upon alleged violations of the BOCA code, which by its own provisions was not applicable to defendant's building, we conclude that the court properly granted the motion to dismiss.

Plaintiff recognizes this conclusion to be correct, as she has abandoned on appeal her position in the trial court that a common law action had been stated based upon violations of the BOCA code. She argues here, however, that a cause of action was stated on the theory of implied warranty of habitability which was recognized in this State by *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208.

*Jack Spring* involved a forcible entry and detainer action against a tenant for possession of the premises she occupied and for rent withheld. As an affirmative defense, the tenant alleged that her apartment was uninhabitable and that her obligation to pay full rent under the lease was dependent upon the landlord's obligation to maintain the premises. The court stated:

> "[W]e hold that included in the contracts, both oral and written, governing the tenancies of the defendants in the multiple unit dwellings occupied by them, is an implied warranty of habitability which is fulfilled by substantial compliance with the pertinent provisions of the Chicago building code.
>
>          \* \* \*
>
> [Our holding] does not alter the long established rule that liability for rent continues so long as the tenant retains possession of the premises [citation], and is applicable only to the factual situations here presented, the occupancy of multiple dwelling units." 50 Ill. 2d 351, 366-67, 280 N.E.2d 208, 217-18.

It is the contention of plaintiff that this quoted language from *Jack Spring* permits an action based upon an implied warranty of habitability and, pointing to allegations that her injuries were proximately caused by violations of the Village building code, she maintains that such an action was stated in her second amended complaint. We disagree.

As noted above, the provisions of the BOCA code do not apply to defendant's building and because it is our view that the *Jack Spring* theory of implied warranty of habitability is based upon a failure of substantial compliance with the provisions of an existing and applicable building or housing code, we conclude that plaintiff has no such cause of action against the defendant under that theory.

We believe this conclusion is supported by the holding in *Jack Spring* that the required standard under implied warranty of habitability is fulfilled by substantial compliance with the pertinent provisions of the

local building code. In so holding, the court relied heavily on reasoning in *Schiro v. W. E. Gould & Co.* (1960), 18 Ill. 2d 538, 165 N.E.2d 286. There, the court stated:

> "It is settled law that all contracts for the purchase and sale of realty are presumed to have been executed in the light of existing law, and with reference to the applicable legal principles. [Citation.] Thus, the law existing at the time and place of the making of the contract is deemed a part of the contract, as though expressly referred to or incorporated in it. [Citations.]
>
> The rationale for this rule is that the parties to the contract would have expressed that which the law implies 'had they not supposed that it was unnecessary to speak of it because the law provided for it.' [Citation.] Consequently, *the courts, in construing the existing law as part of the express contract, are not reading into the contract provisions different from those expressed and intended by the parties, as defendants contend, but are merely construing the contract in accordance with the intent of the parties.*
>      *  *  *
>
> Applying this established law to the instant case, it is evident that the contract to purchase the land and building to be constructed by defendants included, as an integral part, the relevant provisions of the city code in existence at the time the contract was executed. The requirements of that code were, therefore, as much a part of the contract as if they had been enumerated by the parties. [Citation.]" (Emphasis added.) (18 Ill. 2d 538, 544-45, 165 N.E.2d 286, 290-91.)

The *Jack Spring* court found the above-quoted reasoning in *Schiro* to be analogous in situations where a breach of an implied warranty of habitability is alleged because of noncompliance with the pertinent provisions of the building code. (50 Ill. 2d 351, 361-62, 280 N.E.2d 208, 214-15.) Thus, in the instant case, if we were to hold, as plaintiff urges, that the BOCA code was the standard as to habitability, we would be reading into the lease something not within the contemplation of the parties when it was signed; namely, the provisions of a code not applicable to defendant's building. It appears clear from the above *Schiro* language, which was adopted in *Jack Spring,* that the courts will not read provisions into a contract different from those expressed and intended by the parties.

Moreover, *Jack Spring* did not disturb the conventional principle that the covenant to repair and the covenant to pay rent were mutually exclusive. It appears to have held only that a tenant in a multiple unit dwelling could raise as an affirmative defense in an action for nonpayment of rent that the premises were uninhabitable. No personal injury claim was involved in *Jack Spring,* and the cases relied upon by

plaintiff here do not support her position as none involved claims or damages because of personal injury. *Gillette v. Anderson* (1972), 4 Ill. App. 3d 838, 282 N.E.2d 149, held that a tenant had an action under an implied warranty of habitability for the return of rent where the landlord was not in substantial compliance with the building code provisions. *Jarrell v. Hartman* (1977), 48 Ill. App. 3d 985, 363 N.E.2d 626, permitted an action by a tenant against a landlord under an implied warranty of habitability for damages (not for personal injury) on allegations that there were substantial violations of the local building code. *Fisher v. Holt* (1977), 52 Ill. App. 3d 164, 367 N.E.2d 370, involved a suit by a landlord for possession and a counterclaim by the tenant for a reduction of rent under an implied warranty of habitability grounded on violations of the building code.

In what appears to be the only Illinois case which has considered the question as to whether such a personal injury action could be asserted, the court in *Dapkunas v. Cagle* (1976), 42 Ill. App. 3d 644, 650, 356 N.E.2d 575, 579-80, stated:

> "Plaintiff has not cited any cases in which a tenant has been allowed to recover for personal injuries under a theory of an implied warranty of habitability. Our own research indicates that a few such cases have occurred in jurisdictions other than Illinois. In a California case (*Charleville v. Metropolitan Trust Co.* (1934), 136 Cal. App. 349, 29 P.2d 241) and in three Massachusetts cases (*Hacker v. Nitschke* (1942), 310 Mass. 754, 39 N.E.2d 644, 139 A.L.R. 257; *Ackarey v. Carbonaro* (1946), 320 Mass. 537, 70 N.E.2d 418; and *Horton v. Marston* (1967), 352 Mass. 322, 225 N.E.2d 311) the courts have held that a tenant could properly recover under an implied warranty of habitability or suitability for occupancy when he had been injured as a result of some defect in the *furnished* apartment he had rented. In *Charleville, Hacker,* and *Horton* the defect occurred with respect to some aspect of the furnishings; in *Ackarey,* the defect occurred with respect to a piazza railing.
>
> The rulings in those four cases rest upon a doctrine first adopted in an English case (*Smith v. Marrable* (1843), 11 Meeson & Welsby 5) and later adopted in some of the States in this country. (See 51C C.J.S. *Landlord & Tenant,* §305b (1968).) The rule adopted in *Smith v. Marrable* was that in all leases of furnished houses there is an implied warranty of habitability and fitness. That rule was never adopted in this State and, in fact, was expressly rejected in *Rubens v. Hill,* 115 Ill. App. 565, *aff'd.* 213 Ill. 523, 72 N.E. 1127. We, therefore, do not feel that the rulings of *Charleville, Hacker, Horton,* or *Ackarey,* can aid plaintiff in the instant case."

It was also stated in *Dapkunas* that:

"Nowhere in *Jack Spring* do we find an indication that the Supreme Court, by applying an implied warranty of habitability in multiple-unit dwelling rentals, intended to change the established law in Illinois governing personal injury suits by tenants against landlords. Such a change would have far reaching and serious consequences. For this court to find that the Supreme Court contemplated such a serious change in the law, when it made no discussion on the subject, would be entirely inappropriate. We are, therefore, unwilling to adopt plaintiff's argument with respect to the applicability of *Jack Spring* to the instant case." 42 Ill. App. 3d 644, 650, 356 N.E.2d 575, 579.

We are in accord with this reasoning in *Dapkunas*. We believe that while the theory of implied warranty of habitability was properly used as a shield by the tenant to justify the withholding of rent or even as a spear in situations involving rent disputes such as in *Gillette, Jarrell*, and *Fisher* because, in such situations, the economic consequences to the landlord are limited to a loss of rent. Where, however, the expanded warranty is sought to be used as a spear in an action for damages because of personal injuries, we think that the economic and social consequences which would be involved are such that, as stated in *Dapkunas*, it would be inappropriate for us to find here (as it urges) that *Jack Spring* permits such an action.

For the reasons stated, the trial court's judgment is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.