MERWIN O. GLASOE, Plaintiff-Appellee, *v.* JERRY TRINKLE *et al.*, Defendants-Appellants.

Fourth District   No. 4—83—0354

Opinion filed April 9, 1984.

James Hagle, of Land of Lincoln Legal Assistance Foundation, Inc., of Champaign, for appellants.

John E. Maloney, of Maloney & Davis, of Urbana, for appellee.

JUSTICE TRAPP delivered the opinion of the court:

Defendants Jerry and Diane Trinkle appeal from a judgment of the circuit court of Champaign County striking count II of their counterclaim which sought damages for the loss of use and enjoyment of a leased duplex resulting from an alleged breach of an implied warranty of habitability. The narrow issue for our review is whether an implied warranty of habitability extends to a lease of residential real estate in the absence of a building code applicable to such real estate. We affirm.

On August 18, 1978, plaintiff and defendants entered into an oral agreement to rent, on a monthly basis, a duplex located in St. Joseph, Illinois. Defendants tendered a security deposit and rent, and took possession of the premises until October 17, 1981, when they were constructively evicted from the duplex as a result of an inoperable furnace. Plaintiff-landlord later filed the present complaint, charging that defendants owed him rent in the amount of $960 for the months of July through October 1981. Defendants answered the complaint, denied that rent was due and owing, and set up four counterclaims

and affirmative defenses seeking: damages resulting from their constructive eviction (count I), damages as a result of the plaintiff's alleged breach of an implied warranty of habitability (count II), a return of defendants' security deposit (count III), and indemnification for collect phone calls made by plaintiff to defendants' phone (count IV).

On April 13, 1983, the trial court found that defendants had been constructively evicted; that they were entitled to rent credits for various bail bonds paid by defendants on plaintiff's behalf; and dismissed count II of defendants' counterclaim, entering judgment for the plaintiff in the amount of $152.69. With regard to defendants' second counterclaim, which is the only count before this court, the trial court reasoned that the counterclaim failed to state a cause of action because there was no building code applicable to the rental housing.

The sole issue presented in this appeal may be defined quite narrowly as whether the seminal opinion of *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208, requires the existence of a building code to prove a breach of an implied warranty of habitability in a lease of residential real estate. In *Jack Spring*, the supreme court held that "included in the contracts, both oral and written, governing the tenancies of the defendants in the multiple unit dwellings occupied by them, is an implied warranty of habitability which is fulfilled by substantial compliance with the pertinent provisions of the Chicago building code." (50 Ill. 2d 351, 366, 280 N.E.2d 208, 217.) Plaintiff argues that *Jack Spring* requires that there be an applicable building code before any duty arises to repair or improve leased premises, while defendants suggest that limiting *Jack Spring* to cities with building codes undermines the rationale of that opinion and unjustifiably discriminates between tenants living in cities with building codes and those living in areas where no building code exists.

The problem in the present case arises from the fact that the holding in *Jack Spring* was narrowly worded as applying to instances of building code violations while the reasoning of the court leads to the natural inference that the court was departing from the settled rule at common law that a landlord had no duty to repair or maintain leased premises, regardless of proof of a breach of a local building code. Quoting from *Javins v. First National Realty Corp.* (D.C. Cir. 1970), 428 F.2d 1071, the court in *Jack Spring* noted:

> " 'In our judgment the common law itself must recognize the landlord's obligation to keep his premises in a habitable condition. This conclusion is compelled by three separate considerations. First, we believe that the old rule was based on certain factual assumptions which are no longer true; on its own terms,

it can no longer be justified. Second, we believe that the consumer protection cases discussed above require that the old rule be abandoned in order to bring residential landlord-tenant law into harmony with the principles on which those cases rest. Third, we think that the nature of today's urban housing market also dictates abandonment of the old rule. ***' " 50 Ill. 2d 351, 363, 280 N.E.2d 208, 215.

In *Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 417 N.E.2d 1297, the supreme court extended the implied warranty of habitability to single-dwelling units subject to municipal building codes affirming that the implied warranty of habitability applied to all leased premises and not just multiple-dwelling units, but the court did not decide whether the implied warranty applied in the absence of a building code. The court in *Pole Realty* recognized that the reasoning articulated in *Jack Spring* did not justify a restriction of its holding, but, nevertheless, the breach in *Pole Realty* was also alleged to have occurred because of violations of the Chicago building code. The court in *Pole Realty* did cite to several cases where proof of a breach of the implied warranty was held not to require evidence of building code violations, but these cases were not cited for such propositions. *Foisy v. Wyman* (1973), 83 Wash. 2d 22, 515 P.2d 160; *Mease v. Fox* (Iowa 1972), 200 N.W.2d 791; *Lemle v. Breeden* (1969), 51 Hawaii 426, 462 P.2d 470.

Although defendants would have us read *Jack Spring* as creating an implied warranty of habitability to apply to all leased real estate, two decisions in other districts of this appellate court have limited the rule in *Jack Spring* to cases alleging building code violations.

In *Dapkunas v. Cagle* (1976), 42 Ill. App. 3d 644, 356 N.E.2d 575, a tenant sued her landlord for personal injuries she sustained as a result of the landlord's failure to maintain stairs leading to her apartment. Relief was sought on theories of negligence and implied warranty of habitability, although no building code violations were alleged. The fifth district of the appellate court affirmed the dismissal of plaintiff's complaint noting that the implied warranty of habitability applied only to multiple-dwelling units (pre-*Pole Realty*) subject to building codes and that *Jack Spring* did not change the landlord's tort liability for defective premises. In explaining the necessity of proving a building code violation, the court in *Dapkunas* relied heavily upon the fact that *Jack Spring* cited *Schiro v. W.E. Gould & Co.* (1960), 18 Ill. 2d 538, 165 N.E.2d 286. Writing for the court, Justice Jones explained that *Jack Spring* involved violations of the building code of Chicago and found it significant that the supreme court in

*Jack Spring* pointed out that the situation then before it was analogous to that of an earlier case (*Schiro v. W.E. Gould & Co.* (1960), 18 Ill. 2d 538, 165 N.E.2d 286) where the court had held that an applicable building code was as much a part of a real estate sales contract as those parts enumerated by the parties. The opinion in *Dapkunas* notes that the supreme court then went on in *Jack Spring* to point out that the implied warranty of habitability would be fulfilled by substantial compliance with the pertinent provisions of the Chicago building code. *Dapkunas* concluded:

"By way of contrast, however, in the instant case plaintiff's fifth amended complaint made no allegation of a violation of an applicable building code; nor did it even allege that a building code was in effect in Johnston City, Illinois. It can hardly be assumed, therefore, that plaintiff's oral lease incorporated the provision of a building code just as if such provisions had been enumerated by the parties." *Dapkunas v. Cagle* (1976), 42 Ill. App. 3d 644, 649-50, 356 N.E.2d 575, 579.

Following *Dapkunas* was *Beese v. National Bank* (1980), 82 Ill. App. 3d 932, 403 N.E.2d 595, which also upheld a dismissal of a complaint seeking damages for personal injury resulting from a breach of an implied warranty of habitability. The *Beese* court followed the reasoning of *Dapkunas* and denied recovery because no building code applied and plaintiff was suing for personal injuries. Again, the court relied upon *Jack Spring's* citation to *Schiro* in support of its conclusion that *Jack Spring* did not intend to create new landlord common law duties but only a duty to obey municipal building codes which were implied in the lease between the parties.

Defendants criticize *Dapkunas* and *Beese* and assert that *Jack Spring* was meant to protect tenant's expectations of a habitable dwelling and that such expectations exist whether or not a building code applies. They distinguish both *Beese* and *Dapkunas* as relating only to instances in which suits were brought to recover damages for personal injuries where judicial reluctance to extend the implied warranty of habitability has been most pronounced. They state that the court's primary concern in those cases was in limiting landlord liability unless tort standards were met and that such hesitancy of extending the implied warranty of habitability to situations where no building code existed would not make sense if claims for personal injury were not involved. We are not persuaded by this distinction which defendants draw, for both *Beese* and *Dapkunas* expressly note the absence of an alleged building code violation as an alternative ground for decision. If, as defendants claim, both *Dapkunas* and *Beese* were

unpersuaded that *Jack Spring* recognized a departure from traditional tort liability standards in the law of landlord and tenant and were focusing solely on that, any discussion of building code violations would have been unnecessary. Finally, the view adopted in *Dapkunas* and *Beese* was followed by this court in *Auburn v. Amoco Oil Co.* (1982), 106 Ill. App. 3d 60, 435 N.E.2d 780, and we are not persuaded that this decision has lost its validity in the short time since it has been decided. In *Auburn*, following *Dapkunas* and *Beese*, we held that personal injury damages were not recoverable under an implied warranty of habitability theory. As noted by Justice Green, writing for the court:

> "In both cases [*Beese* and *Dapkunas*] the appellate court, in affirming the dismissal, held that the implied warranty recognized in *Jack Spring* did not arise unless the property was subject to a building code. Both courts also held that the complaints were also defective because no action for personal injuries can result from a breach of the implied warranty of habitability. Both courts indicated that an extension by them of the law of landlord and tenant was neither appropriate nor desirable. We are in general agreement with the reasoning of the courts in those cases." 106 Ill. App. 3d 60, 64, 435 N.E.2d 780, 783.

We conclude that *Jack Spring* and *Pole Realty* do not require the extension of an implied warranty of habitability to leased residential real estate in the absence of a building code, unless and until further extension is required by the supreme court. We find no compelling reason to depart from what was said by this court in *Auburn. Jack Spring's* reliance on *Schiro* also persuades us that the implied warranty of habitability becomes an implied covenant of a rental agreement only where an applicable building code provides a definite and ascertainable standard against which to measure the landlord's duty of compliance.

For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

MILLER and WEBBER, JJ., concur.