South Center Department Store, Inc., an Illinois Corporation, Appellee, v. South Parkway Building Corporation, an Illinois Corporation, and South Parking, Inc., an Illinois Corporation, Appellants.

Gen. No. 47,397.

First District, Third Division.
June 27, 1958.
Released for publication October 23, 1958.

Albert E. Jenner, Jr., and Kenneth J. Burns, Jr., both of Chicago (Thompson, Raymond, Mayer, Jenner & Bloomstein, of Chicago, of counsel) for South Parkway Building Corporation, defendants-appellants.

Harry A. Bahrmasel, for South Parking, Inc., defendant-appellant.

Theodore Revzan, and Mayer Goldberg, of Chicago (Burton Berger, and Marvin Sacks, of counsel) for South Center Department Store, Inc., plaintiff-appellee.

JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a decree granting a permanent injunction. It was granted after and upon a motion for a temporary injunction which was based upon a complaint which prayed for a permanent injunction and the construction of a written lease which was attached to the complaint. The court had before it the complaint, the answers of the defendants and the benefit of arguments of counsel, and in its decree construed the lease and entered the permanent injunction.

This appeal was taken by the defendants. The facts which are disclosed by the pleadings or which are otherwise admitted, are as follows: The plaintiff, South Center Department Store, Inc., appellee, entered into a lease as lessee with the South Parkway Building Corporation, appellant, as lessor, on June 24, 1952. That lease demised certain other premises to the plaintiff for its use in operating a department store. After those premises had been described, the lease contained the following language: "including the exclusive right to the use of the passenger and freight elevators in the leased premises, and together with

". . .

"(b) The non-exclusive right to use the Lessor's parking lot adjacent to the demised premises for the benefit of the Lessee's officers, employees and customers without charge so long as said lot is operated by or for the Lessor for parking purposes."

It is the nature and extent of the right granted by "(b)" which is the subject matter of this litigation.

The parking lot was not actually adjacent to the premises demised to the lessee, but was adjacent to the building which contained the premises so leased. It had place for the parking of 60 cars, 20 of which had been allocated to a Tastee Freez stand which occupied a corner of the vacant property, leaving 40 car stalls to be shared by the lessee with the tenants and customers of the multi-story building which housed, among other tenants, the Department of Labor of the State of Illinois, a theatre, a grocery store, a five-and-ten-cent store, a drug store and several specialty or service shops. The lessor maintained a watchman at the parking lot, and no other maintenance was necessary.

In 1956 the defendant purchased two pieces of property adjoining the parking lot on the side away from the building in which the plaintiff occupied a part of the space as a store. It spent more than $100,000 in purchasing and improving this additional property. If this property was joined with the original parking lot area, the space would be enlarged from 60 stalls—20 of which were allocated to Tastee Freez—to 175 stalls. On May 1, 1957 the defendant South Parkway Building Corporation entered into a lease with the other defendant, South Parking, Inc., for the space originally included in the parking lot and the space subsequently acquired adjacent thereto, for the use of the premises by the lessee, South Parking, Inc., as a parking lot as a commercial venture. It is conceded by

64

all that the defendant landlord's interest in the property is only that of a lessor, entitled to receive a prescribed rental from the said South Parking, Inc.

From June 24, 1952, the date of the lease of the store premises between the plaintiff and the defendant-lessor, until at least May 1, 1957, the date of the defendant-lessor's lease with the defendant South Parking, Inc., the plaintiff continued to share the 40 parking spaces on a no-charge basis together with all of the other tenants and customers using the defendant-lessor's building. In some way the plaintiff in July 1957 became cognizant of the change contemplated in the parking arrangement, and advised the defendant-lessor in writing on August 9, 1957 that it, the lessee, did not desire or want any interference with its parking rights and privileges. On August 17, 1957 the defendant-lessor advised the plaintiff in writing that it had leased the parking lot to an independent parking lot operator and that the parking lot was therefore no longer to be operated "by or for the lessor," and that in due course all of the tenants would receive notice of the change. On August 19th a notice was given to all the tenants in regard to the parking facilities to be furnished by the new lessee. On August 30, 1957 the complaint was filed.

The basic problem presented in the construction of the lease is as to the nature and extent of the right that the clause of the lease above quoted gave to the plaintiff-lessee in the lot owned by the defendant-lessor and used at the time of the execution of the lease for parking. By its express terms the right which the lessee has is a "right to use," and is "nonexclusive." The right was shared with all of the other lessees in the lessor's building, and all of their employees and customers. Again, by its express terms, the use was "without charge." The term of the grant of this no-charge, nonexclusive right to use was "so long as said

lot is operated by or for the Lessor for parking purposes."

■ In an early Illinois case (Holladay v. Chicago Arc Light & Power Co., 55 Ill. App. 463, 466–467) the court considered the distinction between a lease and license, as follows:

"Whether a contract be a lease or a license will be determined, not from what the parties to it may choose to call it, nor from the language used, but from the legal effect of its provisions.

". . .

"Whether a tenancy is created or not depends upon the intention of the parties, although this intention must in most cases be inferred from the circumstances which attend the case. 'In general, the question of possession will determine the matter.' Alwood v. Ruckman, 21 Ill. 200; see, also Gunning Co. v. Cusack, 50 Ill. App. 290.

" 'An instrument that merely gives to another the right to use premises for a specific purpose, the owner of the premises retaining the possession and control of the premises, confers no interest in the land and is not a lease, but a mere license.' Wood's Landlord and Tenant, sec. 227.

"A lease possesses the property of passing an interest in the land, and partakes of the nature of an estate. Taylor's Landlord and Tenant, sec. 14.

"A license is an authority to do some act on the land of another, without passing an estate in the land, and 'being a mere personal privilege, it can only be enjoyed by the licensee himself, and is not therefore assignable so that an under tenant can claim privileges conceded to a lessee.' Ibid., sec. 237a.

"Exclusive possession is essential to the character of a lease. Central Mills v. Hart, 124 Mass. 123."

That case is still the leading case in Illinois, and is so cited in 24 I. L. P. Landlord and Tenant, sec. 21. It is

66

clear from that analysis that here the lessee had only the right to use the premises for a specific purpose. The lessor remained in possession and control of the premises, and therefore the interest which the lessee had is a license.

█ The rights of termination of the license would be different if the license were coupled with an interest in the land. It is obvious that the interest in the land must be in the specific premises to which the license attaches. It is equally obvious under the facts in this case that the plaintiff-lessee had no other interest in the parking lot than that given in this particular clause creating a license. It is well determined that a license is a mere personal and revocable privilege to do an act or a series of acts upon the land of another without possessing any interest or estate in the land (City of Berwyn v. Berglund, 255 Ill. 498, 500), and that it can be revoked at will (Davidson v. Dingeldine, 295 Ill. 367, 374; 25 I. L. P. Licenses, sec. 135). It therefore follows that any limitation upon the lessor's right to cancel this license is in derogation of the general right of the lessor to cancel at will.

██ This brings us to the question of what freedom of action was left the lessor in regard to the termination of the license in view of the language limiting the term thusly: "so long as said lot is operated by or for the lessor for parking purposes." The lessor itself could have built a building to be used for either general commercial purposes or general residential purposes and used that lot in the building, and that action would have terminated whatever interest the plaintiff had. The lessor could have operated any such general type of building, including an automobile sales room or a repair garage. It is certainly clear that if the lessor had sold the real estate involved, his immediate buyer or any subsequent purchaser could have used it for any lawful purpose, including the operation

67

of a parking lot, and the tenant's rights in the premises would have been completely terminated.

It is of course true that the prime consideration in the construction of any instrument is to ascertain and effectuate the intent of the parties at the time of execution of the document. Law v. Kane, 384 Ill. 591, 596. It is equally true that leases are construed most strongly against the lessor. (Goldberg v. Pearl, 306 Ill. 436, 439–440), and the document must be construed as a whole (Dolley v. Powers, 404 Ill. 510, 512–513), taking into consideration all of the circumstances surrounding its execution.

Can it be said that a tenant who rents a piece of property for a specific purpose and pays the landlord a rent for the property, is "operating" the property "by and for" the landlord? A tenant is not ipso facto an agent of the landlord. Hawley v. Curry, 74 Ill. App. 309, 310. The limits of the term of the license relates not to the ownership of the property but to the operation of the property. The words "for" and "by" are words of agency. The word "by" indicates that the person involved is actually doing something himself. The word "for" coupled with a person, generally indicates the person who is receiving the benefit or is acting for someone else. Can it be said that a tenant is working for his landlord? Much stress has been laid upon dictionary meanings of "by" and "for." It has been urged that "for" means "instead of"; "in lieu of"; "in place of." Is not that a distinction without a difference? Is a tenant operating his business, no matter what it might be, in place of the lessor—in lieu of the lessor; or is he operating an independent business which he controls? Is it conceivable that when the lessor and the lessee executed this lease in 1952, they had in mind any such tortured meaning as would make a tenant's normal activities be construed that he was operating "by" or "for" his landlord? We cannot be-

68

lieve that that is the proper construction of this language in this lease. It is clear to us that the lessee's license to use was rightfully terminated by the lessor when it entered into the lease with South Parking, Inc., on May 1, 1957.

The defendant-lessor has raised other questions relating to the points of whether the plaintiff has alleged irreparable harm which would entitle it to injunctive relief, and whether the answers of the defendants have not raised questions of fact relating to the importance and necessity of free parking to the plaintiff, and questions allied thereto. These matters become unimportant in view of our opinion of the meaning of the cause and the effect of the lessor's action.

The decree will be reversed and the cause remanded with directions to dissolve the permanent injunction heretofore entered and dismiss the complaint for want of equity.

Reversed and remanded with directions.

FRIEND, P. J. and BURKE, J., concur.