OWEN McARDLE, Plaintiff and Counterdefendant-Appellee, *v.*
CARL COURSON, Defendant and Counterplaintiff-Appellant.

Fourth District    No. 15565

Opinion filed March 12, 1980.—Rehearing denied April 21, 1980.

CRAVEN, J., dissenting.

Dukes, O'Rourke, Stewart & Martin, Ltd., of Danville (Harry E. Stewart and John F. Martin, of counsel), for appellant.

Donald L. Merlie, of Danville, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

On January 17, 1978, plaintiff Owen McArdle filed a complaint in forcible entry and detainer in the circuit court of Vermilion County alleging that defendant Carl Courson was withholding possession of a building owned by plaintiff and owed him rent. The defendant's answer stated that under the terms of the lease he did not owe the plaintiff any rent. Also, the defendant filed a counterclaim, alleging that failure of the plaintiff to maintain the roof in the condition agreed upon resulted in damage to him. After a bench trial, the trial court entered an order which

awarded the plaintiff possession, $4,225 for back rent, and the cost of the lawsuit, and denied the defendant's counterclaim.

Defendant appeals, asserting (1) the trial court's finding that plaintiff maintained the roof in as good repair as required by the lease was contrary to the manifest weight of the evidence; (2) because of plaintiff's breach of the foregoing term of the lease, defendant was entitled as a matter of law to withhold rent while retaining possession; and (3) the court's order terminating the lease was an improper forfeiture.

The evidence at trial showed that the parties entered into the lease in question on March 12, 1970. The plaintiff, landlord, agreed to rent a building in Westville, Illinois, to the defendant, tenant, for $325 per month for five years. Pursuant to an option in the lease, the defendant renewed the lease for an additional five years. An addendum to the lease stated that the plaintiff would sell the building and land that defendant was leasing for $10,000 provided and subject to the defendant renting said premises for the 10-year period.

After the defendant renewed the lease for the additional 5-year period, he subleased the premises to William Carter and Dennis Shanks on February 1, 1976. At trial, Shanks testified that he started having trouble with the roof leaking around March 1976. He stated that although Mr. Haggerty, a roof contractor and repairman, fixed the roof numerous times, it would resume leaking. Shanks went on to testify that the water leakage caused damage to his merchandise. On August 9, 1977, the subtenants wrote the defendant a letter stating that if the problem was not corrected, they were going to terminate the lease with the defendant. On September 16, 1977, the subtenants notified the defendant in a letter that they elected to terminate and cancel their lease.

Shanks did not make any effort to relocate his business, a hardware store. He testified that he did not think any of the other buildings in Westville were big enough for his store, and that if he had not had water problems, he would not have terminated the lease.

Plaintiff testified that he lives in Texas and has been away from Westville since 1961. He stated that he gave the subtenant the authority in May 1977 to have the roof fixed anytime it leaked. He also stated that he had received three letters from the defendant's attorney which informed him of the problems the subtenant was having with the roof and stated that he was in breach of paragraph 10 of the lease. In relevant part, paragraph 10 states: "The Landlord agrees to maintain in good repair at the Landlord's cost the roof * * * the ceilings * * * and structural portions of the demised premises during the term of this lease and any extension thereof."

The plaintiff testified that the defendant stopped paying rent around November 1977.

Haggerty, the roof contractor and repairman, testified that he had an agreement with the plaintiff to repair the roof whenever he was asked to and then bill the plaintiff for his work. He stated that he may have been out to work on the roof 10 times since 1970, and that the "problem has tended to get worse as time goes on and the roof gets older." However, he said that he did not think he had worked on the roof more than four times while subtenant Shanks was occupying the building. He went on to testify that at one time it would cost $3,000-$4,000 for a less expensive roofing job but now it would cost in the neighborhood of $20,000-$30,000 for a totally new roof. Another contractor, Kenneth Divan, testified that the building needed a new roof. He stated that he got a bid of $1,850 from Danville Sheet Metal for a new roof on the building.

The defendant testified that he still has possession of the building and he has sublet it since the time Shanks left. He said the roof was still leaking.

Regardless of the efforts made to repair the roof, the evidence is undisputed that it continued to leak. Such a roof is not maintained in "good repair." We conclude that the trial court's determination to the contrary is, itself, contrary to the manifest weight of the evidence.

Given that the plaintiff did not maintain the roof in "good repair," the next issue we must decide is whether the defendant properly withheld the rent from the plaintiff while still maintaining possession of the premises. Defendant relies upon the provisions of paragraph 23 of the lease, the substance of which was to provide that if the plaintiff, landlord, breaches his duty to maintain the roof in "good repair," then the tenant "shall have an election to either terminate and cancel this lease * * * or the tenant may remedy said breach * * * and the cost of such action shall be deducted by the tenant from the unpaid rent * * *."

■ Defendant maintains that paragraph 23 should be construed to authorize him, upon breach of the covenant to repair, to withhold rent and then make repairs in the future. We recognize that the lease should be most strongly construed against the lessor who drafted it. (*South Center Department Store v. South Parkway Building Corp.* (1958), 19 Ill. App. 2d 61, 153 N.E.2d 241.) However, even applying that rule, we can only construe paragraph 23 to require action by the lessee to make the repairs to be a condition precedent to the withholding of rent. We conclude that the withholding was not expressly authorized by paragraph 23.

■ We also conclude that there was no mutuality between the plaintiff's covenant to keep the premises in repair and the defendant's covenant to pay rent which gave rise to a right in defendant to withhold rent while remaining in possession. In speaking of leases of commercial property, the court stated by way of dictum in *Yuan Kane Ing v. Levy* (1975), 26 Ill. App. 3d 889, 892, 326 N.E.2d 51, 54, "Even if an express covenant to

repair has been given, the usual construction is that the covenants of the lessor and lessee are independent, and therefore the lessee may not treat the lessor's failure to repair as a basis for stopping rent payments. [Citation.]" If the mere existence of the covenants to repair and to pay rent are insufficient to make them mutual, we see no other provision of the lease which would do so. We agree that paragraph 23 does not necessarily limit the remedies available to the parties. However, it would be illogical to hold that the paragraph which sets forth certain remedies creates a mutuality which, in turn, gives rise to remedies which would not otherwise exist.

We are unaware of any authority in this State for permitting a commercial tenant to both remain in possession and refuse to pay rent when a landlord breaches a covenant of the lease, unless the terms of the lease so provide. We conclude that the defendant had no right to do so here and that when he did, he breached the lease.

■■ The effect of the court's judgment was to forfeit the lease and therefore the option-to-purchase provision of the document. Defendant contends that because of this effect, the judgment was erroneous, even if he should not have withheld the rent while retaining possession. He correctly states that a trial court's equitable powers permit it, in a proper case, to prevent a forfeiture of a lease which contains an option of the lessee to purchase. (*Illinois Merchants Trust v. Harvey* (1929), 335 Ill. 284, 167 N.E. 69; *Macy v. Brown* (1927), 326 Ill. 556, 158 N.E. 216.) The case of *Illinois Merchants Trust* cites as an example of such a case, one where during the lease large improvements or repairs were made at the expense of the tenant. No such evidence was shown here.

Defendant requests that we frame our ruling on the issue of the propriety of the forfeiture by analogizing to the legislative provision that in forcible entry and detainer proceedings against a contract purchaser of real estate, the trial court (1) is required to grant a defaulting purchaser a 180-day grace period to remedy his default if he has paid at least 25 percent of the contract sales price, and (2) may grant lesser grace periods under certain circumstances when a lesser percentage has been paid. (Ill. Rev. Stat. 1977, ch. 57, par. 13.) He calls to our attention that he had made rental payments for 70 percent of the term of the 10-year lease at the end of which his option to purchase would ripen. However, the analogy cannot be made. Ordinarily, rent payments are primarily for the right to occupy the premises. It would be very difficult to determine the amount by which the agreement to pay rent was increased because of the option, and no evidence in that respect was presented here. Thus, it cannot be determined what payments made by defendant might be considered to be analogous to installment purchase payments.

Upon this record, the fact that the judgment entered worked a forfeiture of the lease did not make it erroneous.

We do not deem the remedies set forth in paragraph 23 to be the sole remedies available to the defendant, tenant, for a breach by the plaintiff, landlord, of the covenant to keep the premises in repair. The trial court's judgment on the counterclaim was based on its finding that plaintiff had not breached his covenant to keep the premises in reasonable repair. As we have determined that finding to be contrary to the manifest weight of the evidence, we reverse the judgment in favor of plaintiff on the counterclaim. We deem the evidence such that plaintiff could never prevail in the defense of that charge. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Accordingly, the judgment for the plaintiff on the complaint is affirmed. The judgment for plaintiff on the counterclaim is reversed. The trial court is directed to enter a judgment in favor of defendant on the question of liability on the counterclaim and to hold a new trial on the question of damages on the counterclaim.

Affirmed in part; reversed in part; and remanded.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:
Paragraph 10 of the parties' lease states:
"10. The Landlord agrees to maintain in good repair at the Landlord's cost the roof, * * * during the term of this lease and any extension thereof."
Paragraph 23 of the lease, in pertinent part, reads:
"23. In the event the Landlord shall fail to perform the covenants and/or agreements of this lease which are required to be performed by the Landlord and/or there is a breach of any warranty made or implied herein by the Landlord then the Tenant may require the Landlord to remedy said default or defaults by the service of written notice * * * *then the Tenant shall have an election to either terminate and cancel this lease * * * or the Tenant may remedy said breach of covenants, agreements and/or warranties and the cost of such action shall be deducted by the Tenant from the unpaid rents* which shall accrue under the unexpired term of this lease or any extension thereof." (Emphasis added.)
Traditionally, under the common law, the landlord is not bound to repair unless he has expressly agreed to do so. (*McDaniel v. Silvernail*

(1976), 37 Ill. App. 3d 884, 346 N.E.2d 382; *Yuan Kane Ing. v. Levy* (1975), 26 Ill. App. 3d 889, 326 N.E.2d 51.) In this case, as paragraph 10 of the lease shows, landlord has expressly agreed in the lease to maintain the roof in good repair at his own cost.

The majority, quoting dictum, states that even if an express covenant to repair has been given, the usual construction is that the covenants of the lessor and the lessee are independent, and therefore the lessee may not treat the lessor's failure to repair as a basis for stopping rent payments. *Yuan Kane Ing*, 26 Ill. App. 3d 889, 892, 326 N.E.2d 51, 54.

Quite simply, I think the express language of the lease precludes the court from construing the landlord's covenant to repair as being independent from the defendant's covenant to pay rent. Paragraph 23 of the lease clearly states that if the landlord breaches his covenant to repair, then the tenant has two options: (1) he can cancel the lease; or (2) "remedy said breach of covenants, agreements and/or warranties and the cost of such action shall be deducted by the Tenant from the unpaid rents * * *."

I think the operative language of the lease clearly allows the tenant to do what he did: withhold rent in order to accumulate money with which to repair the roof. On the other hand, the majority construes paragraph 23 of the lease to require the lessee to make the repairs—which at least would cost over $1,000—before he may withhold rent. Perhaps the language is ambiguous. But, in the case of an ambiguity, the lease should be construed against the lessor who drafted it. (*South Center Department Store, Inc. v. South Parkway Building Corp.* (1958), 19 Ill. App. 2d 61, 153 N.E.2d 241.) Therefore, I do not think the tenant breached his covenant to pay rent, and thus I do not think the landlord is entitled to possession.

In the seminal Illinois opinion of *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208, the Illinois Supreme Court held:

> "[I]ncluded in the contracts, both oral and written, governing the tenancies of the defendants in the multiple unit dwellings occupied by them, is an implied warranty of habitability * * *." 50 Ill. 2d 351, 366, 280 N.E.2d 208, 217.

I am aware of the appellate court cases that hold that the holding of *Jack Spring, Inc.* is limited only to residential leases. (See, *e.g., Yuan Kane Ing.*) However, neither the language nor logic behind *Jack Spring, Inc.* dictates this conclusion. Rather, the reasoning and the policy behind *Jack Spring, Inc.* support the extension of its holding to the present situation.

Under Illinois law, a residential landlord cannot collect rent from a tenant if the dwelling is not habitable. (*Jack Spring, Inc.; Pole Realty Co. v. Sorrels* (1979), 78 Ill. App. 3d 361, 397 N.E.2d 539.) In other words, living quarters must be livable.

Quite simply, I think a commercial landlord should not be able to

collect rent from a tenant if the leased building is not usable. The leased building should be usable for the purpose for which it was leased. It is truly a medieval law that allows a landlord to collect rent from a tenant for a building that continually leaks. Therefore, analogizing *Jack Spring, Inc.*, I would hold that an implied warranty of usability is included in contracts governing tenancies in commercial realty.

I think that the tenant did not breach his covenant to pay rent because of the express language in the lease, and because the building was not usable for the purposes for which it was leased.

Therefore, I dissent.