Robert MURPHY, William Leo and Paul Waszak, Plaintiffs,

v.

TEXACO, INC., Defendant.

No. 82 C 1355.

United States District Court, N.D. Illinois, E.D.

June 21, 1983.

M. Steven Krupnick, Arlington Heights, Ill., Joseph E. Voelkl, Lisle, Ill., for plaintiffs.

John W. Stack, Winston & Strawn, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Three lessees of gasoline stations owned by Texaco, Inc. ("Texaco") sued Texaco, challenging (under the Petroleum Marketing Practices Act, 15 U.S.C. § 2802, and perhaps under Illinois law as well) its termination of (and refusal to renew) their leases and franchises. In turn Texaco filed a four-count amended counterclaim. Counterclaim Count I ("Count I") asserts plaintiffs' liability under Illinois law for rent incurred during the post-termination period in which they have continued to occupy and operate their service stations. Texaco now moves under Fed.R.Civ.P. ("Rule") 56 for summary judgment on Count I. For the reasons stated in this memorandum opinion and order Texaco's motion is granted.

### Facts [1]

Some time during 1979 or 1980 each plaintiff signed the same standard lease form (the "Lease") and Agreement of Sale (both drafted by Texaco), entitling him to lease a service station, to market Texaco products under the Texaco brand name and to use the Texaco trademarks to promote such sales. Under Lease ¶ 2(a), Texaco was permitted to "terminate or fail to renew this Lease only for good cause and not in bad faith."

Each plaintiff began selling non-Texaco brand name products at some point during the term of his Lease. In late September or early October 1981 each plaintiff attempted to notify his customers of that practice by posting in the window of his service station the following sign:

[1]. In accordance with the uniform case law under Rule 56, this factual account reflects (1) uncontroverted evidence, (2) admissions by either side and (3) reasonable evidentiary inferences favorable to plaintiffs, *Thornton v. Evans,* 692 F.2d 1064, 1074–75 (7th Cir.1982).

ATTENTION
THIS STATION
DOES NOT NECESSARILY
SELL TEXACO
PRODUCTS, ASK ATTENDANT
FOR FURTHER INFORMATION

Illinois Gasoline
Dealers Ass'n. The Management

Nonetheless each plaintiff continued to use Texaco's trademarks, including the large Texaco hexagonal sign and Texaco-trademarked gasoline pumps. Texaco objected to plaintiffs' practices as an abuse of each plaintiff's right to use Texaco trademarks and brand names and as a violation of his franchise obligations. Consequently Texaco gave advance notice to each plaintiff of its intention to terminate (and not renew) his Lease and franchise effective February 1, 1982.

Each plaintiff refused to vacate his service station on the designated termination date. Subsequently Texaco instituted eviction proceedings against at least one of the three plaintiffs under Illinois' forcible detainer laws. To date plaintiffs remain in possession of their stations.

*Summary Judgment*

Count I seeks damages and injunctive relief to remedy the injuries suffered by Texaco as a result of plaintiffs' possession of the gasoline stations since February 1, 1982. As for its damages element, Count I is apparently based on two alternative theories:

1. If plaintiffs' continued possession of those facilities is wrongful, plaintiffs are liable for any resulting damages.

2. If plaintiffs establish the Leases were still in force (by showing Texaco improperly terminated the Leases), plaintiffs are liable for the rent incurred since February 1, 1982.

Regardless of which theory is applicable, there is no factual dispute that defeats Texaco's entitlement as a matter of law to the same accrued amount, equal to the rent under the respective Leases.

Because the second theory is conceptually more straightforward, it will be dealt with first. By definition each plaintiff is liable for past rent under that theory (assuming the validity of its predicate).

Plaintiffs counter unpersuasively that Texaco's asserted failure to perform certain covenants under the Lease and the Agreement of Sale extinguishes their obligation to pay rent. But that argument flies in the face of Illinois law, which follows the entrenched common law rule as to the independence of the covenant to pay rent:

> We are unaware of any authority in this state for permitting a commercial tenant [like each plaintiff] to both remain in possession and refuse to pay rent when a landlord breaches a covenant of the lease, unless the terms of the lease so provide.

*McArdle v. Courson,* 82 Ill.App.3d 123, 126, 37 Ill.Dec. 402, 405, 402 N.E.2d 292, 295 (4th Dist.1980). Accordingly each plaintiff must pay back rent, for (1) each has elected to retain possession and (2) his Lease does not condition rental obligations on Texaco's performance of any of its covenants.

As for the first theory, it too warrants summary judgment in Texaco's favor. Under Illinois common law an individual "who, after rightfully being in possession of rented premises, continues in possession after his right to such possession has terminated" is a tenant at sufferance (24 I.L.P. Landlord and Tenant § 68, at 197 (1980)). To the extent plaintiffs have that status (as the first theory presumes), Texaco had the sole option to evict them as trespassers or to treat them as holdover tenants bound by the terms of the expired Leases (*id.* § 128, at 233). But once Texaco has exercised that option it may not alter its election (*id.* § 129, at 234).

Texaco's actions establish unequivocally it has opted to regard plaintiffs as trespassers:

1. It has already begun eviction proceedings against at least one of the plaintiffs.

2. It has taken the position in this case that plaintiffs are trespassers. Accordingly Texaco cannot seek past rent (qua rent) from plaintiffs as holdover tenants.[2] Nonetheless on this assumed alternative Texaco is entitled to any damages resulting from plaintiffs' wrongful possession. Such damages include recovery for any rental income Texaco could have obtained during the post-termination period—an amount based on the then-prevailing market rental rate.

 It is of course not always true that current fair market rental is equal to the rental rate prescribed by a now-terminated lease. However the Lease figures are at least prima facie evidence of market rentals, particularly where as here the Leases were executed within the past few years. And given plaintiffs' total failure to proffer any other evidence on the issue,[3] the evidence of the Leases is dispositive in Rule 56 terms.[4]

### Conclusion

Both roads lead to the same destination. Texaco's motion for summary judgment on Count I is granted, with judgment to be entered for an amount equal to the full back rent specified in each Lease.[5]

2. According to their memoranda, plaintiffs have already paid rent for March 1983 and have apparently agreed with Texaco to pay rent for subsequent months. However, Texaco's actions do not create a holdover tenancy, because Texaco conditioned its acceptance of rent on its right to continue to object to plaintiffs' possession of the premises. *See id.* § 129, at 235.

3. Indeed plaintiffs' fervent desire to continue their leasing arrangements itself suggests the Lease rates do not exceed corresponding market rentals.

4. In a last ditch effort to avoid liability (under either of the two theories), plaintiffs assert:
 1. Texaco has rejected plaintiffs' tenders of rent by refusing to exercise its right to use for rent collection its pre-authorized checks drawn on plaintiffs' bank accounts.
 2. That rejection relieved plaintiffs of their rental responsibilities.
Both aspects of plaintiffs' argument are bankrupt:
 1. Texaco's refusal to use plaintiffs' pre-authorized checks at most signifies its unwillingness to resort to self-help measures, not its rejection of any rental tender.

2. Even if Texaco's actions could be so characterized, that does not mean Texaco renounced any rental claims against plaintiffs. Its refusal to accept rent at that juncture only illustrated its resolve to avoid transforming plaintiffs into holdover tenants. Moreover, because Texaco's claimed release of plaintiffs from their rental obligations was not supported by consideration, it would not appear enforceable in any event. For each of these several reasons, Texaco is free to seek recovery of past rents from plaintiffs.

5. Given the agreement referred to at n. 2, it may be plaintiffs will enlarge their voluntary commitment to embrace the unjustifiably rent-free period covered by this opinion. If not, a Rule 54(b) determination will be necessary to permit Texaco to execute on its judgment for rent or its equivalent while the rest of this controversy proceeds. And such a determination seems wholly appropriate to avoid frustration of the policy of independent covenants exemplified by *McArdle*. In that event Texaco is invited to tender a form of order reflecting the appropriate considerations. *See Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).