**Carl W. ARNETT, Jr., and Mary L. Arnett, Respondents,**

v.

**USX CORPORATION and Concordia Lumber Co., Inc., Appellants.**

**No. WD 40006.**

Missouri Court of Appeals, Western District.

Nov. 8, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Deined Dec. 27, 1988

Application to Transfer Denied Feb. 14, 1989.

Daniel L. Fowler, J. Mark Baird, Kansas City, for USX Corp.

James T. Buckley, Max E. Mitchell, Sedalia, for respondents.

Before KENNEDY, C.J., and BERREY and FENNER, JJ.

KENNEDY, Chief Judge.

USX Corporation appeals from a judgment awarding to Carl W. Arnett, Jr., and Mary L. Arnett the sum of $41,250 rental under a lease of real property owned by Arnetts and leased to USX; and denying to USX a judgment declaring that said lease had been effectively cancelled as of October 22, 1986.

The leased property was a commercial bulk fertilizer warehouse and distribution facility at LaMonte, Missouri. It included a large (60 feet by 60 feet in area) frame warehouse structure with a concrete floor. The lease was for a ten-year term beginning January 1, 1981. It called for advance rental of $11,500 per calendar quarter for

the first five years, then $13,750 per quarter beginning January 1, 1986.

USX in March 1983, subleased the premises to Concordia Lumber Company for the balance of the term of its lease from Arnett. Concordia Lumber Company thereafter occupied the premises and operated the fertilizer business.

By letter dated January 21, 1986, USX notified Arnetts that certain repairs to the large warehouse were required. According to trial evidence, water was entering the structure, causing damage to the fertilizer stored therein. The letter cited a lease provision obligating the Arnetts to make repairs and maintenance, which lease provision will be set out in haec verba presently.

During the months that followed, the Arnetts inspected the building and made some repairs, including the replacement of part of the roof. USX insisted the repairs did not comply with the terms of the lease. Finally on October 22, 1986, USX sent the Arnetts a letter which said: "Pursuant to paragraph 19.1 of the agreement we are hereby terminating the lease in its entirety thirty days herefrom for failure to maintain the facility as required by § 8.1 hereof."

The quarterly rental installments due October 1, 1986, and thereafter were not paid.

This litigation ensued. It was initiated by the Arnetts in a claim against USX for rent, and a claim for damages for failure of tenant to make repairs which lease imposed upon tenant. USX and Concordia Lumber Company in a counterclaim against Arnetts sought reimbursement for repairs made which the Arnetts were obligated by the lease to make, and for water damage to the fertilizer. The Arnetts' claim for rent and USX's counterclaim for declaratory judgment were separated from the other issues for trial, and the judgment therein was designated as final for purposes of appeal.

Although USX purported to terminate the lease as of November 21, 1986, in accordance with the foregoing notice, Concordia Lumber Company nevertheless continued to occupy the premises and at the time of trial April 30—May 5, 1987, it was still in occupation thereof.

The terms of the lease which are pertinent here are as follows:

## ARTICLE VIII—MAINTENANCE

8.1 ARNETT shall be responsible for all maintenance and repairs of a capital or structural nature necessary and proper for the utilization of the Premises including repair and maintenance of the foundation and structural members,.... If any repairs or maintenance constituting obligations of ARNETT hereunder are needed, USS shall notify ARNETT in writing thereof and ARNETT shall have 180 days from receipt of such notice to make such repairs and take care of such maintenance; ....

....

## ARTICLE XIX—USS'S OPTION TO CANCEL

19.1 Anything herein to the contrary notwithstanding, USS shall have the right to cancel and terminate this Lease in its entirety on thirty (30) days notice to Lessors at any time it cannot fully and freely occupy and utilize the premises as contemplated because of:

(b) ARNETT's failure to maintain the property as required by Paragraph 8.1 hereof.

19.3 USS's right to cancel this Lease in accordance with Paragraph 19.1(b) above shall be subject to the following conditions:

(a) The problems encountered which support such right are totally and finally cured and resolved by ARNETT at ARNETT's sole cost and expense within one hundred eighty (180) days calculated, as in Article VII, from notice by Lessee.

(The "USS" named as lessor in the lease is the predecessor of USX.)

The trial court held that USX could not cancel its lease and thereby be relieved of its liability for rent without surrendering possession to the Arnetts. On that ground—since Concordia Lumber Company had continued in possession of the leased

premises—the court rendered the judgment appealed from.

■ We hold that the trial court was correct in its holding and judgment. In order for USX effectively to cancel the lease for the Arnetts' failure to repair, it was necessary that USX surrender possession of the leased premises to the Arnetts. It would be a curious doctrine indeed that would allow the tenant to cancel the lease which alone gave him the right of possession, and then leave him in rent-free possession of the premises. *Banister Real Estate Co. v. Edwards*, 282 S.W. 138 (Mo. App.1926); *Petroleum Collections Incorporated v. Swords*, 48 Cal.App.3d 841, 122 Cal.Rptr. 114 (1975); *McArdle v. Courson*, 82 Ill.App.3d 123, 37 Ill.Dec. 402, 402 N.E. 2d 292 (Ill.App.1980). *Annotation, Rights and Remedies of Tenant Upon Landlord's Breach of Covenant to Repair*, 28 A.L.R. 2d 446 (1953), and 49 Am.Jur.2d *Landlord & Tenant* § 608 *(1970)* will lead the student to other cases on the subject.

USX says, however, that it could not surrender possession to the Arnetts, because the leased premises were not in the possession of USX but were rather in the possession of Concordia Lumber Company. It says that Concordia Lumber Company's possession could not be attributed to it, USX.

■ The possession of Concordia Lumber Company under the sublease was derived from USX and may be said to be the possession of USX. *Buchanan v. Louisiana Purchase Exposition Co.*, 245 Mo. 337, 149 S.W. 26 (1912); 51C C.J.S., *Landlord and Tenant*, § 48(1)(a) (1968). The Arnetts had no contractual relationship with Concordia Lumber Company at all. The Arnetts' contract was only with USX, and it was to USX that Arnetts looked for performance. If, as USX says, it has somehow placed itself in a position it cannot deliver possession to the Arnetts, it has done so by its own act or acts (in entering into the sublease with Concordia Lumber Company, and in cancelling the lease with Arnett) to which Arnetts were not privy. If it has placed itself in a position that it cannot deliver possession, then it has placed itself in a position it is unable to cancel the lease from the Arnetts. One cannot by his own act place himself in a position to be unable to perform a contract, then plead that inability to perform as an excuse for nonperformance. *Buchanan v. Louisiana Purchase Exposition Co.*, 149 S.W. at 28–9; *see also* 17 Am.Jur.2d *Contracts* § 400 (1964).

USX then says that the lease provision which requires it to surrender up possession to the owner "when this lease terminates by *limitation* or *forfeiture*" does not require USX to surrender possession to the Arnetts when the lease terminates by neither of those events but by *cancellation*. USX attributes to the term "forfeiture" its narrow technical meaning of "the loss of land by a tenant to his lord as a consequence of some breach of fidelity." *Black's Law Dictionary*, 584–85 (rev. 5th ed. 1979); *Sitzes v. Raidt*, 335 S.W.2d 690 (Mo.App.1960). USX's argument would presumably lead to the conclusion that it could cancel the lease and yet continue in possession, without any obligation to pay rent, for the balance of the term. We do not need to ascertain the meaning of the term "forfeiture" as it is used in this provision of the lease. The Arnetts are not seeking to enforce any contractual duty of USX to surrender possession to it; they have not demanded possession. They evidently do not want possession. They only assert that USX's purported cancellation of the lease, if authorized by the lease terms, was ineffective without surrender of possession to them of the leased premises. This condition precedent to the right of cancellation is implied in law, and does not rest upon any lease provision requiring the surrender of possession by the tenant.

The judgment is affirmed.

All concur.